UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LISA A. SAVAGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:11-cv-151-WTL-TAB |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Lisa A. Savage requests judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The Court rules as follows.

### I.  PROCEDURAL BACKGROUND

Savage initially filed her application for SSI and DIB on December 18, 2006, alleging that she became disabled in April 2005 due to depression, asthma, gastroesophageal reflux disease ("GERD"), obesity, plantar fasciitis, heart problems, and claustrophobia. Her application was denied initially and upon reconsideration, whereupon she requested and was granted a hearing before an Administrative Law Judge ("ALJ"). A hearing was held before ALJ Deborah A. Arnold on July 10, 2009, at which Savage was represented by counsel. Savage and vocational expert Harold Steinberg testified at the hearing.

The ALJ issued a decision denying Savage's application on January 13, 2010. The

Appeals Council upheld the ALJ's decision on December 17, 2010. Savage then filed this timely appeal.

## II. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b).[1] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d).

---

[1]The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

At step four, if the claimant is able to perform her past relevant work, she is not disabled.  20 C.F.R. § 404.1520(f).  At step five, if the claimant can perform any other work in the national economy, she is not disabled.  20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this court may not reweigh the evidence or substitute its judgment for that of the ALJ.  *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008).  The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993).  However,  the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).  The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability.  *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).  The ALJ must articulate his analysis of the evidence in his decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Id.*

### III.  THE ALJ'S DECISION

Applying the five-step analysis, the ALJ found that Savage was not disabled on or at any time from April 10, 2005, through the date of her decision. At step one of the analysis, the ALJ found that Savage had not engaged in any substantial gainful activity ("SGA") after April 10, 2005, because Savage's earnings after that date were insufficient to meet the SGA earnings

3

requirements. The ALJ also found that her work during that time did not qualify as an unsuccessful work attempt because it lasted for thirteen months. At steps two and three of the analysis, the ALJ determined that Savage suffered from the severe impairments of depression, asthma, GERD, obesity, plantar fasciitis, heart problems, and claustrophobia, but that her impairments did not meet or medically equal a listed impairment.

At step four, the ALJ concluded that Savage retained the residual functional capacity ("RFC") to "perform work related activities except that [she] is limited in that she can only perform jobs involving simple, repetitive tasks with occasional interaction with others and can have no concentrated exposure to pulmonary irritants." The ALJ concluded that, given Savage's RFC, she was not able to return to her past relevant work as a home health aide, clothing sales person, or teaching assistant in a daycare center. However, considering her age, education, work experience, and RFC, the ALJ found that she was capable of performing a significant number of other jobs in the national economy, including hand packer, courier, mail clerk, and office helper, among others. Therefore, the ALJ determined at step five that Savage was not disabled.

## IV. DISCUSSION

Savage advances several objections to the ALJ's decision, each of which is addressed, in turn, below.

### A. Failure to Develop the Record Regarding Savage's IQ

Savage argues that the ALJ failed to fully develop the record because she did not order an intelligence quotient ("IQ") test to determine whether Savage is *per se* disabled under Medical Listing 12.05, mental retardation. Listing 12.05 directs a finding of disability for a person with "significantly subaverage general intellectual functioning," which the Listing defines to include

those with an IQ below 60 and those with an IQ between 60-70 who also demonstrate a physical or mental impairment that causes work-related limitations.  "While a claimant bears the burden of proving disability, the ALJ in a Social Security hearing has a duty to develop a full and fair record." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009).  The Seventh Circuit "generally upholds the reasoned judgment of the Commissioner on how much evidence to gather." *Id.*; *see also Elbert v. Barnhart*, 335 F. Supp.2d 892, 905 (E.D. Wis. 2004) ("[B]ecause the primary responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant, and because it is always possible to identify one more test or examination an ALJ might have sought, the ALJ's reasoned judgment of how much evidence to gather should generally be respected.") (citations omitted).

     In this case, the record before the ALJ clearly and unequivocally called Savage's intellectual ability into question.  Dr. Thomas A. Smith, a clinical psychologist, conducted a mental status examination on behalf of the Disability Determination Bureau and concluded as follows:  "Intellectually she appears to be functioning well below average, perhaps in the mild mental retardation range." Record at 340.  Consistent with this evaluation, Savage's case manager at Midtown Community Mental Health Center, Lindi Yarnell, reported that she "appears to have slightly slowed cognition, in that she seems confused by instructions at times and will ask more than once about something that has already been explained.  CM tried to put things in the simplest terms possible for her.  She usually is able to pick up on the instructions after a more simplified explanation." *Id.* at 326.  There is nothing on the record to suggest that Savage is not limited by her intellectual ability; rather, as the ALJ notes in her decision, "[[a]lthough borderline intellectual functioning was suspected, no scores from an examination

5

made to determine the claimant's valid IQ are present in the record." *Id.* at 20.

Given the record before the ALJ, while it is a very close call, the Court finds that this case is an exception to the general rule that the ALJ's decision with regard to whether the record needs to be supplemented should be upheld. The record was clear that there were issues with Savage's intellectual ability and that her functioning was affected by it. Given that fact, the Court believes the ALJ erred in not sending Savage for an IQ test so that her step three determination could be based on a fully developed record, rather than on the absence of evidence. Accordingly, remand is appropriate to enable the ALJ to obtain and consider Savage's IQ scores.

## B. Failure to Evaluate Savage's Mental Impairments Properly

Savage also argues that the ALJ did not fulfill her duty to properly evaluate Savage's psychological impairments. The Court agrees.

The ALJ found that Savage suffers from the severe impairment of depression, and the record certainly confirms that fact. Indeed, Savage sought treatment at Midtown Community Mental Health Center ("Midtown") in October 2006 because she had suicidal ideation. At that time she began regular treatment at Midtown for depression. Her treatment included medication as well as participation in group and individual therapy. In August 2007 she enrolled in an intensive "partial hospitalization" program at Midtown which she participated in for several months; after that program was discontinued by Midtown, she continued in group and individual therapy.

The record contains several evaluations of Savage's mental condition. First, as referenced above, Dr. Smith conducted a Mental Status Examination on March 6, 2007. Dr.

Smith diagnosed Savage with major depressive disorder, recurrent without complete interepisodal recovery, severe with psychotic features and panic disorder with agoraphobia, and assessed her GAF at 45.  His summary of his assessment of her mental condition reads as follows:

> Ms. Savage has depression and a panic disorder, both of which interfere with her functioning in numerous ways.  She has dysphoria, sleep disturbance, loss of interest, low energy, slowed functioning, cognitive inefficiency, low self-esteem and recent thoughts of suicide.  She also has avoidance of others and muscle tension, restlessness, edginess, easy startling, difficulty concentrating, irritability and easy fatigue.  It is possible that she has a psychosis, but that is not clear from the current information.

Record at 340.   Dr. Smith further opined that Savage was not capable of managing her own funds.

On September 30, 2009, Dr. Anuradha Thumuluri, M.D., and Deborah May, DNS, who began treating Savage for depression in March 2009, completed a Mental Residual Functional Capacity Assessment form in which they opined that Savage was unable to perform the following:  understand and remember very short and simply instructions; understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without

distracting them or exhibiting behavior extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; and set realistic goals or make plans independently of others.

Taken together, these assessments paint a picture of Savage as someone who is unable to work due to her mental impairments. Consistent with these assessments is one that was made at the Larue D. Carter Memorial Hospital on February 2, 2009, as part of an evaluation to determine whether Savage was an appropriate subject for a study on psychotic depression. At that time, she was diagnosed with major depressive disorder, recurrent with psychotic features, and given a GAF of 40.

The ALJ rejected these assessments, however, in favor of that of Dr. Joseph A. Pressner, a psychologist who completed a Mental Residual Functional Capacity Assessment form on March 19, 2007, after reviewing Savage's records. Dr. Pressner checked boxes that indicated that Savage was moderately limited in the following mental activities: (1) ability to understand and remember detailed instructions; (2) ability to carry out detailed instructions; and (3) ability to maintain attention and concentration for extended periods. Dr. Pressner found that she was not significantly limited in any of the other categories listed on the form. Dr. Pressner also completed a Psychiatric Review Technique form and a Psychiatric Review Technique form on which he opined that Savage did not have any of the symptoms listed in the "A Criteria" for Listing 12.04 (affective disorders) or Listing 12.06 (anxiety-related disorders); that she had the following functional limitations: (1) mild restriction of activities of daily living; (2) moderate difficulties in maintaining social functioning; and (3) mild difficulties in maintaining

concentration, persistence, or pace; and that she did not satisfy the "C Criteria" for either Listing.

Dr. Pressner provided the following narrative regarding his functional capacity assessment:

> The claimant alleged disability due to depression, anxiety, and claustrophibia [sic.]. The claimant was referred to Dr. Thomas A. Smith, Ph.D. for an evaluation who diagnosed Major Depressive d/o, recurrent w/o complete interepisodal recovery, severey [sic.] w/ psychotic features, Panic d/o w/ agoraphobia, and BIF suspected. GAF of 45 given. The consultant did not give any medical opinions in regard to functional limitations nor is there any other medical opinion in file.
>
> The MER and reports of functioning in file suggest that the claimant is capable of understanding, remembering, and carrying out simple instructions. She is able to take public transportation on her own and make simple meals in the microwave. It seems possible that there would be deficits in the claimant's ability to carry out more detailed instructions. The information in file suggests that the claimant has the intellectual wherewithal to make simply work related decisions, to remember locations, and to remember simple work-like procedures. She was able to attend group meetings on a weekly basis without difficulty, and attendance was excellent. The claimant seems capable of observing the usual safety precautions and maintaining an ordinary routine without special supervision.
>
> The claimant seems to relate adequately to other people. She does not have many friends, but spends some time with family, got along well in group, and had no difficulties interacting with case manager. Therefore it appears that the claimant would be able to relate adequately to co-workers, and to work supervisors. Interpersonal conflicts on the job would probably be within normal limits for the population at large. The claimant seems capable of seeking necessary assistance from others. It does not appear that others would unduly distract the claimant.
>
> The claimant's activities suggest that the claimant can attend to task for extended periods. She watches TV regularly and is able to sustain an adequate attention span. The claimant's pace would be within normal limits. The claimant seems able to manage day-to-day stresses, and thus should be able to adapt to change within the work place. It appears that the claimant is capable of maintaining a schedule. Any problems with tardiness or absenteeism would seem to be a matter of choice rather than the effects of the claimant's mental disorder.
>
> Thus, although the claimant has a severely limiting condition, it appears that the claimant retains the ability to perform simple, repetitive tasks on a

sustained basis without extraordinary accommodations.[2]

Record at 345. Dr. Pressner's assessment was concurred with by another reviewer.

Because Dr. Thumuluri is a psychiatrist who treated Savage,[3] her opinion was entitled to "'controlling weight'" if it was "'well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.'" *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010) (quoting 20 C.F.R. § 404.1527(d)(2) and citing *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir.2010) and *Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir.2010)). "An ALJ who does not give controlling weight to the opinion of the claimant's treating physician must offer "'good reasons'" for declining to do so." *Larson*, 615 F.3d at 749 (quoting 20 C.F.R. § 404.1527(d)(2) and citing *Schaaf*, 602 F.3d at 875 and *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir.2007)).

In this case, it is not clear that the ALJ recognized Dr. Thumuluri as a treating physician. She did, however, discuss Dr. Thumuluri's opinion in her decision as follows:

> The opinion provided by Dr. Anuradha Thumuluri regarding claimant's limitations due to her mental impairments is not entitled to great weight. Dr. Thumuluri opined that the claimant cannot understand, remember and carry out detailed instructions or very short and simple instructions, or sustain ordinary routine without special supervision. [S]he further opined maintain [sic] attention and concentration for extended periods of time, maintain regular attendance, be punctual, maintain socially appropriate behavior, respond appropriately to changes in work settings, be aware of normal hazards, and accept criticism and respond appropriately is not consistent with the entire record of evidence [sic]. Dr. Thumuluri's opinion is inconsistent with the record since [she] concludes the

---

[2]The Court notes that it is not clear what Dr. Pressner deems an "extraordinary" accommodation; nor is it clear whether any "non-extraordinary" accommodations that Savage might require would render her disabled for SSI and DIB purposes.

[3]Both Savage and the Commissioner characterize Dr. Thumuluri as a treating psychiatrist in their briefs.

10

> claimant cannot sustain an ordinary routine without special supervision or remember and carry out very short and simple instructions, yet the record shows the claimant is not only able to regularly attend multiple therapy sessions during the week, but that her attendance is "excellent." Since Dr. Thumuluri's opinion is inconsistent with the record, the undersigned does not give great weight to Dr. Thumuluri's opinions.

Record at 24. In essence then, the ALJ rejected Dr. Thumuluri's opinion regarding Savage's condition because she believed it was inconsistent with Savage's ability to "multiple therapy sessions during the week" with "excellent" attendance. As evidence of this ability to maintain excellent attendance, the ALJ cites to the report of Dr. Pressner and Savage's own testimony. While Savage did testify that she attends therapy four times a week, she also testified that she has trouble getting to her therapy sessions on time because "I have problems getting out of the house. I have problem [sic] getting out of the house and my surroundings. I don't like to do anything anymore." Record at 51. She further testified that she has trouble remembering things and that she remembered to come to the hearing because a family member reminded her. *Id.* at 52. Therefore Savage's testimony does not support the conclusion for which the ALJ cites it. Further, while Dr. Pressner does say in his narrative that Savage's attendance at group therapy was excellent, the record also includes a report by Savage's case manager to a social security representative in March 2007 that while Savage attended group therapy weekly, she "wasn't good at following through on individual sessions." Record at 326. This is consistent with other notations in her records from Midtown. *See*, *e.g. id.* at 546 (Midtown record dated January 29, 2007 indicating that Savage missed an appointment because she "forgot); *id.* at 616 (Midtown record dated February 5, 2008, indicating that Savage has a history of "no call/no show for appointments).

The Court finds that the ALJ disregarded the opinion of Savage's treating psychiatrist

11

without articulating a "good reason" for doing so. The Court further notes that Dr. Pressner's evaluation on which the ALJ relied occurred more than two years prior to the hearing date. During the intervening time, Savage's son was murdered, an event that the record demonstrates clearly had a significant impact on her mental condition. Therefore, even if it was appropriate for the ALJ to rely on Dr. Pressner's opinion regarding Savage's condition in March 2007, it was not appropriate for her to rely on that opinion to determine that Savage was not disabled at the time of the hearing in July 2009, at least not without addressing the later evidence of record that Dr. Pressner did not have the benefit of reviewing.

### C. Savage's Remaining Arguments

Savage advances two addition arguments, each of which merits only a quick mention. First, Savage argues that the ALJ erred in failing to consider her chronic headaches. However, while there was evidence in the record that Savage suffered from headaches, there was nothing to suggest that they are disabling or that she believed herself to be disabled because of them. Second, Savage argues that "the vocational conclusions reached by the ALJ in the decision are at odds with the evidence of record." Savage Brief at 21. This is essentially a reprise of the errors discussed above with regard to the ALJ's findings regarding Savage's mental impairments, and therefore does not require separate analysis here. In addition, Savage argues that the ALJ should have considered whether her need to attend multiple therapy sessions each week would prohibit employment simply because of the time involved. Many people have obligations outside of work, however, and the need to spend several hours a week in therapy does not, by itself, preclude full-time employment.

### V. **CONCLUSION**

For the reasons discussed above, the decision of the Commissioner is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this Entry.  Specifically, the ALJ should reopen the record in order to obtain and consider Savage's IQ scores.  The ALJ also should reconsider the weight to be given the opinion of treating psychiatrist Dr. Thumuluri and should reconsider whether Savage meets or equals Listing 12.05 (mental retardation), Listing 12.04 (affective disorders), and/or List 12.06 (anxiety-related disorders).  If the ALJ again determines that she does not, then she should consider whether Savage's mental impairments nonetheless render her disabled, and should specifically address whether the combined effect of Savage's intellectual deficits and her depression render her disabled.

SO ORDERED:  03/22/2012

_____
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification